**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **QUAYLAIN BROWN** | **CASE NO. 6:24-CV-01494** |
| **VERSUS** | **JUDGE S. MAURICE HICKS, JR.** |
| **CITY OF ABBEVILLE ET AL** | **MAGISTRATE JUDGE DAVID J. AYO** |

**REPORT AND RECOMMENDATION**

The following motions are pending before the undersigned:

- RE-URGED MOTION TO DISMISS filed by Defendant Michael Hardy, individually and in his official capacity as Chief of Police of the City of Abbeville ("Chief Hardy") [Doc. 47];
- RE-URGED PARTIAL MOTION TO DISMISS filed by Defendant the City of Abbeville ("City") [Doc. 48];
- RE-URGED MOTION TO DISMISS PENALTY, PUNITIVE, OR EXEMPLARY DAMAGES filed by the City and Chief Hardy (in his official capacity) [Doc. 49]; and
- RE-URGED RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED filed by Defendant Shawna Miguez ("Miguez") [Doc. 51].

These motions are opposed by Plaintiff Quaylain Brown and are fully briefed. [Docs. 53, 54, 55, 56, 61, 63]. The undersigned issues the following report and recommendation pursuant to 28 U.S.C. § 636. Considering the evidence, the law, and the parties' arguments, and for the reasons explained below, this Court recommends that the instant motions should be granted in part and denied as moot in part as further explained herein.

## Factual Background

Brown was employed as a police officer with the Abbeville Police Department ("APD") from August 19, 2023 until July 26, 2024. [Doc. 1 at ¶¶ 29, 97]. Brown alleges that "almost immediately" upon his employment with APD, Miguez—a fellow APD officer tasked as a dispatcher—began sexually harassing him. [*Id.* at ¶¶ 31–40]. Brown claims that Miguez's frequent, sexually explicit, verbal harassment occurred during work hours while they were on duty, including while in the presence of fellow officers. [*Id.* at ¶¶ 39–42]. Brown alleges that on November 1, 2023, he encountered Miguez in a hallway of the police station, whereupon "Miguez yelled 'gimme that dick!' and tackled Brown to the ground." [*Id.* at ¶ 44]. Brown claims that, while he was on the ground, Miguez groped his genitals. [*Id.* at ¶ 45]. Brown asserts that this incident was witnessed by two fellow APD officers, one of whom captured these events on video. [*Id.* at ¶ 47]. Brown alleges that Miguez continued to harass him after the November 1 incident, including sending what Brown interpreted as sexually suggestive photos and texts to his cell phone. [*Id.* at ¶¶ 51–53].

Brown claims that Chief Hardy was aware of Miguez's conduct, including the November 1 incident, but did not intervene or discipline Miguez. [*Id.* at ¶ 55]. Instead, Brown claims that Chief Hardy issued him a letter of caution for conduct unbecoming of a police officer based on three other incidents, including a text message he sent to Miguez regarding what Brown claims were "insults and lies" Miguez spread to fellow officers regarding him "needing a hearing aid." [*Id.* at ¶ 57]. Brown submitted a written complaint about the November 1 incident to Chief Hardy. [Id. at ¶ 59]. Brown claims Chief Hardy took no action, prompting him to submit the complaint to the Mayor of Abbeville's office. [*Id.* at ¶ 64]. Brown spoke to Chief Hardy the following day, whereupon Hardy "stated that he had spoken to Miguez and warned her about her conduct," but refused to accommodate Brown's

request that he and Miguez not be scheduled on the same shift. [*Id.* at ¶¶ 67–69]. After some discussion, Brown claims that Chief Hardy "brushed off his concerns, saying that they 'have been putting up with her a long time' and that Miguez is 'goofy' and that's just 'how she act[s].'" [*Id.* at ¶¶ 71–73]. Brown asked if he should expect to have to continue working with Miguez, which Chief Hardy affirmed would be the case "until we change shifts." [*Id.* at ¶ 76]. Brown responded,

> Chief, I'm just going to be honest with you, I'm going to take legal action with this. I really do feel like there should be something more that should happen than just her getting a slap on the wrist and stuff like this. You know, I was sexually assaulted. I think that's kind of serious. I came to you first to put it in your hands.

[Doc. 1 at ¶ 76]. Brown alleges that Chief Hardy then angrily stated as follows:

> Do what you gotta do, but you gotta understand, I was just doing a slap on the wrist for what you did also. All I did was put everybody in their place. Everybody got written up. Now you didn't sign your papers, so that means you don't understand and you don't believe in me. So I'm going to turn it over to Internal Affairs. Let's see if they give you a fair shake.

[*Id.* at ¶ 77]. Brown asserts that Chief Hardy filed four Internal Affairs ("IA") complaints against him on February 16, 2024. [*Id.* at ¶ 78]. On February 20, 2024, Brown alleges he received a call from Abbeville City Attorney Bart Broussard, asking him if he would agree to drop his complaints against Miguez if Chief Hardy dismissed the IA complaints filed against him. [*Id.* at ¶ 79]. Brown claims that he refused Broussard's offer. [*Id.* at ¶ 80].

IA eventually found that no action could be taken on the three matters as to which Brown was previously issued a letter of caution but did interview Brown concerning a fourth allegation contained in Chief Hardy's complaints, after which it was recommended that Brown enroll in anger management classes. [*Id.* at ¶¶ 81–82]. Importantly, Brown points

out that he was not issued a letter of caution on this fourth allegation prior to Chief Hardy's IA referral. [*Id.* at ¶ 82].

As of February 26, 2024, Brown was assigned to a new shift and was supervised by Sgt. Emily LeBlanc. Sgt. LeBlanc told Brown that Chief Hardy instructed her to "write up…Brown for every infraction so he could build a case against him" and that Chief Hardy jokingly advised Sgt. LeBlanc not to sexually harass Brown. [*Id.* at ¶ 84]. Brown then filed a formal complaint with the Civil Service Board. [Doc. 1 at ¶ 86].

Brown recalls that, around this time, he approached a fellow officer, Jeremy DeVille, who he believed was spreading a rumor that Brown and Sgt. LeBlanc were involved in a romantic relationship. Brown alleges that, in response, DeVille yelled at him and called him "boy[,]" and "pushed [him] in the face with his open palms two times." [*Id.* at ¶¶ 87–88]. Brown filed a written report of this incident on March 27, 2024. [*Id.* at ¶ 89]. In response, Brown alleges that Chief Hardy moved him to the same shift as DeVille. [*Id.* at ¶ 90].

Brown further alleges that Chief Brown retaliated against him by promoting other, less senior officers ahead of him, contrary to APD's "rigid promotion schedule that is based on seniority." [Id. at ¶¶ 92–93]. Brown filed a charge with the Equal Employment Opportunity Commission ("EEOC") on July 19, 2024. [*Id.* at ¶ 96]. He resigned his employment seven days later. [*Id.* at ¶ 97].

A grand jury indicted Miguez on charges of sexual and simple battery based on the November 1, 2023 altercation as described above. [*Id.* at ¶¶ 100–101]. Brown alleges that Miguez was placed on administrative leave with pay as of August 14, 2024. The EEOC issued Brown a right-to-sue letter on September 30, 2024. [*Id.* at ¶ 119]. Brown points out that,

according to the APD's own website, Miguez remains employed as a dispatcher as of the date of the filing of his suit.[1] [*Id.* at ¶ 120].

Brown filed the instant suit on October 31, 2024, asserting claims for violation of his Fourth, Fifth and Fourteenth Amendment rights under the federal Constitution, Title VII of the Civil Rights Act of 1064, Louisiana's Employment Discrimination Law, the Louisiana Human Rights Act, and Louisiana tort law. Brown named as defendants Chief Hardy individually and in his official capacity, the City, John Does 1–10, and Shawna Miguez, individually and in her official capacity. [Doc. 1 at ¶¶ 14–20]. Brown also asserts a direct action under Louisiana law against Defendants' unnamed insurer, described as "ABC Insurance Companies 1–10." [*Id.*, generally]. Defendants filed motions to dismiss, which were eventually stricken based on entry of a stay of this case due to the pendency of Miguez's underlying criminal prosecution. [Docs. 43, 44].

On November 25, 2025, the parties jointly moved to lift the stay of this case based on resolution of the underlying criminal proceedings. [Doc. 45]. Upon the lifting of the stay, Defendants re-urged their motions to dismiss, which are now briefed and properly before the undersigned for consideration. [Docs. 47, 48, 49, 51].

## **Applicable Standards**

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the district court must limit itself to the contents of the pleadings, including any attachments and exhibits thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.,* 355 F.3d 370, 375 (5th Cir. 2004). When

---

[1] Review of the APD website reveals that Miguez and Brown remain listed as employed personnel. https://abbevillepolice.com/staff-directory/ as of the issuance of this Report and Recommendation.

reviewing a motion to dismiss, a district court may also consider "documents incorporated into the complaint by reference and matters of which a court may take judicial notice." *Funk v. Stryker Corp.,* 631 F.3d 777, 783 (5th Cir. 2011) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007)).

The court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, conclusory allegations and unwarranted deductions of fact are not accepted as true, *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)); *Collins v. Morgan Stanley*, 224 F.3d at 498. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*, 127 U.S. at 570. The allegations must be sufficient "to raise a right to relief above the speculative level," and "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 555 (quoting C. Wright & A. Miller, 5C Federal Practice and Procedure 3d § 1216, pp. 235-36). "While a complaint . . . does not need *detailed* factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations, quotation marks, and brackets omitted; emphasis added). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the plaintiff fails to allege facts

sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Bell Atl. v. Twombly*, 127 U.S. at 570.

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atl. v. Twombly*, 127 U.S. at 556). *See also In Re Southern Scrap,* 541 F.3d 584, 587 (5th Cir. 2008).

## Analysis

### *I. Sexual Harassment and Retaliation Claims under Title VII of the Civil Rights Act of 1964*

Brown's Complaint asserts claims against the City and ABC Insurance Companies[2] for sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. [Doc. 1 at ¶¶ 121–37].

Chief Hardy's motion asserts that Brown is employed by the City, such that Chief Hardy is not Brown's "employer" as is required under Title VII. [Doc. 47-1 at pp. 12–13]. Brown's response affirms that no Title VII claims are asserted against Chief Hardy. [Doc. 53 at p. 9]. Accordingly, this portion of Chief Hardy's motion is moot.

---

[2] As of the date of issuance of this Report and Recommendation, no insurer has been named.

### *II. Sexual Harassment Claims Under Louisiana's Employment Discrimination Law*

Brown's Complaint next asserts sexual harassment claims against all Defendants under Louisiana's Employment Discrimination Law ("LEDL"), La. R.S. § 23:201, *et seq.* The City does not move to dismiss this claim. [*See*, Doc. 48]. Miguez moves to dismiss this claim on the basis that she is not Brown's "employer" as required under the LEDL. [Doc. 51-1 at pp. 5–6]. Brown agrees that the Complaint states no cognizable claim against Miguez because "Miguez was never Brown's employer" and "concedes that those claims may be dismissed" as to Miguez. [Doc. 56 at pp. 6–7]. This Court agrees that the LEDL prohibits "discrimination in employment" by an "employer" as that term is therein defined. An employer is defined as, *inter alia*, "a political subdivision of the state receiving services from an employee and, in return, giving compensation of any kind to an employee." La. R.S. §§ 23:302, 332. Brown does not dispute that, as a police officer with APD, he was employed by the City. Accordingly, dismissal of all Brown's LEDL claims against Miguez is appropriate.

Chief Hardy similarly argues that Brown's individual capacity LEDL claims against him should be dismissed because he was not Brown's "employer" as required by the LEDL. Brown's opposition clarifies that his LEDL claim is brought only against Chief Hardy in his official capacity, such that he does not oppose dismissal of any individual capacity LEDL claim. [Doc. 53 at p. 10]. Chief Hardy further argues that Brown's official capacity claims against him under the LEDL should be dismissed as duplicative of his LEDL claims against the City. Brown does not address the duplicative nature of claims against Chief Hardy in his official capacity and the City.

"Official-capacity suits represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Chief Hardy is the elected head of the Abbeville Police

Department, which is department of the City. Since the City is a defendant to this suit, Brown's claims against Chief Hardy in his official capacity are redundant and should be dismissed. *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001). Accordingly, all LEDL claims against Chief Hardy in his official capacity should be dismissed as redundant to Brown's LEDL claims against the City.

## *III. LEDL Retaliation Claims*

Brown's Complaint asserts LEDL retaliation claims against all Defendants, alleging that he was subjected to unfair treatment after reporting his claims of sexual harassment to "multiple supervisors and the mayor." [Doc. 1 at ¶¶ 143–46]. The City's motion does not address Brown's LEDL retaliation claims. [*See*, Doc. 48].

As with Brown's LEDL sexual harassment claims addressed above, Chief Hardy seeks dismissal of Brown's LEDL claims against him in his individual capacity because he was not Brown's "employer" under the LEDL and in his official capacity, based on redundancy of such claims. [Doc. 48-1 at pp. 13–14]. Brown's opposition clarifies that he intended to assert LEDL retaliation claims against Chief Brown only in his official capacity. [Doc. 53 at pp. 9–10]. Additionally, as discussed above, claims against Chief Brown in his official capacity are duplicative of those asserted against the City. For these reasons, the undersigned will recommend that all LEDL retaliation claims by Brown against Chief Hardy in his individual and official capacities be dismissed.

Miguez also seeks dismissal of all LEDL retaliation claims against her because she was not Brown's "employer" as that term is defined within the LEDL itself. [Doc. 51-1 at pp. 5–6]. Brown's opposition affirms that he does not oppose dismissal of these claims. [Doc. at pp. 6–7]. This Court agrees that dismissal of all LEDL retaliation claims against Miguez in her individual and official capacities is appropriate.

### *IV. Retaliation Claims Under the Louisiana Human Rights Act*

Brown's Complaint asserts claims under the Louisiana Human Rights Act ("LHRA"), La. R.S. § 51:2231, *et seq.* against all Defendants. Brown claims that he "suffered multiple adverse employment actions, including a referral to IA, denial of earned promotions, and being forced to work on the same shifts as his harassers." [Doc. 1 at ¶ 150].

The LHRA was enacted in 1988 for the purpose of extending the policies of the Federal Civil Rights Acts of 1964, 1968, and 1972, as well as the Age Discrimination in Employment Act of 1967, to Louisiana. Specifically, the LHRA is intended to "safeguard all individuals within the state from discrimination because of race, creed, color, religion, sex, age, disability, or national origin in connection with employment and in connection with public accommodations." La. R.S. § 51:2231(A). The LHRA makes it unlawful for an employer to conspire to

> retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this Chapter or by Chapter 3-A of the Louisiana Revised Statutes of 1950, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this Chapter or by Chapter 3-A of Title 23 of the Louisiana Revised Statutes of 1950.

La. R.S. § 51:2256. Importantly, the LHRA incorporates the LEDL's definition of "employer," found at La. R.S. § 23:302.

Miguez and Chief Hardy seek dismissal of Brown's LHRA claims on the basis that neither was Brown's "employer" as that term is therein defined. [Doc. 47-1 at p. 14; Doc. 51-1 at pp. 6–8]. Brown concedes that neither Miguez nor Chief Hardy was his "employer" under the LHRA and, accordingly, dismissal of these claims is appropriate. This Court agrees.

The City seeks dismissal of Brown's LHRA claim, pointing out that Brown's Complaint cites La. R.S. § 51:2256, which prohibits conspiracy by an employer to retaliate

against an employee who opposes a practice made unlawful under the LEDL. The City argues that Brown fails to sufficiently allege acts of conspiracy, such that this claim fails as a matter of law. [Doc. 48-1 at pp. 9–11]. Plaintiff argues that the Complaint fairly alleges that Chief Hardy conspired with Sgt. Emily LeBlanc and the Abbeville City Attorney to "bully [Brown] into dropping his complaints against Defendant Miguez[.]" [Doc. 54 at p. 8]. The City denies that these allegations are sufficient to support a claim for conspiracy under Section 2256. Specifically, the City asserts that Brown's claims do not allege an agreement between any parties for an unlawful purpose. [Doc. 63 at pp. 5–7].

Having carefully reviewed Brown's Complaint, this Court finds that it alleges insufficient facts which, if proven, would support a claim for conspiracy under the LHRA. Brown fails to allege an agreement between any persons for an unlawful purpose and acts in furtherance of such agreement. As cited by the Court in *Phelps v. Calumet Lubricants Co., LP*, "conspiracy" as defined by Black's Law Dictionary requires "[a]n agreement by two or more persons to commit an unlawful act, coupled with an intent to achieve the agreement's objective, and (in most states) action or conduct that furthers the agreement…" 2016 WL 4497011 (W.D. La. Aug. 24, 2016) (citing Conspiracy, Black's Law Edition (10th ed. 2014)).[3] Brown's Complaint alleges that Chief Hardy instructed Sgt. LeBlanc to write Brown up as often as possible to establish a basis for his eventual termination, and that Chief Hardy called the City Attorney and described Brown as a "piece of shit" and stated that the charges against Miguez should be dropped. [Doc. 1 at ¶¶ 84, 95].

Assuming the truth of these allegations for purposes of this motion, neither establishes a conspiracy under Louisiana law. In the first instance, Brown alleges that Chief

[3] The latest edition of Black's Law Dictionary, the Twelfth Edition, published in 2024, continues to define "conspiracy" as cited above.

Hardy instructed an officer under his supervision to perform a task, which may, if proven, constitute retaliation, but such allegation does not include the agreement among those persons to act in concert for the purpose of committing retaliation. In fact, Brown's own allegation suggests that Sgt. LeBlanc did not agree to participate in the gratuitous use of write-ups for the purpose of justifying Brown's eventual termination. Instead, Brown alleges that Sgt. LeBlanc shared Chief Hardy's instructions with Brown, apprizing him of Chief Hardy's alleged plan. [*See*, Doc. 1 at ¶ 84]. In the second instance, Brown alleges that Chief Hardy attempted to influence the City Attorney to drop the charges brought against Miguez arising from the November 1, 2023 altercation with Brown. That the City Attorney approached Brown to ask him to reconsider these charges does not constitute an agreement between Chief Hardy and the City Attorney for an unlawful purpose. This is supported by the fact, as recognized by Brown, that Miguez was prosecuted for simple and sexual battery. [Doc. 45]. Accordingly, this Court will recommend that Brown's claims of conspiracy to retaliate under the LHRA be dismissed with prejudice.

### *V. Assault and Battery*

Brown's Complaint alleges that Miguez "engaged in non-consensual offensive and harmful contact with Officer Brown when she tackled him in the hallway of the Abbeville Police Department and groped his genitals." [Doc. 1 at ¶ 152]. Miguez's motion asserts that, to the extent that this claim is asserted against Miguez in her individual and official capacities, such claims are redundant. [Doc. 51-1 at p. 8]. While Brown's Complaint specifies that this claim is brought only as against Miguez, and not the City, the undersigned finds that the Complaint alleges *Monell* liability for this conduct as against the City. [*See*, Doc. 1 at ¶¶ 164–67]. Although Miguez and Brown were on duty at the time of the November 1, 2023 incident, Brown's allegations do not establish a basis for official capacity tort liability under Louisiana law. Although Miguez's tortious conduct allegedly occurred while she was

on duty and on the premises of her employment, the facts as alleged do not support a finding that her conduct was "primarily employment rooted" or "reasonably incidental to the performance of [Miguez's] duties." *Miller v. Keating*, 349 So. 2d 265, 268 (La. 1977) (citing *LeBrane v. Lewis*, 292 So. 2d 216 (La. 1974)). Accordingly, this Court will recommend that Brown's official capacity tort claims be dismissed with prejudice.

Miguez's motion also seeks dismissal of any claim by Brown for punitive damages, citing Louisiana law limiting punitive damages in civil cases unless specifically provided for by statute. [Doc. 51-1 at p. 8]. Brown's opposition confirms that he asserts no punitive damages claim against Miguez for the intentional torts of assault and battery under Louisiana law. [Doc. 56 at p. 7]. Accordingly, Miguez's motion is moot as to punitive damages claims against Miguez in her individual capacity based on assault and battery.

### ***VI. Exemplary Damages Pursuant to LA. CIV. CODE ANN. art. 2315.11***

Article 2315.11 of the Louisiana Civil Code provides for the imposition of exemplary damages against any tortfeasor who is adjudged to have committed the intentional tort of sexual harassment in a workplace. LA. CIV. CODE ANN. art. 2315.11(A). Brown's Complaint asserts a claim for exemplary damages against Miguez under this provision. [Doc. 1 at ¶¶ 154–58]. Miguez's motion points out that, to the extent that Brown asserts a claim for exemplary damages under this provision against Miguez in her individual and official capacities, these claims are redundant. [Doc. 51-1 at p. 8].

Subsection (B) of article 2315.11 expressly provides that exemplary damages under this provision "shall be applicable only to the perpetrator of the sexual assault." Accordingly, no claim for these damages lies against the City as a matter of law. Additionally, for the reasons expressed above, the undersigned finds that Brown does not state a claim under this provision against Miguez in her official capacity. For these reasons, Miguez's motion is moot as to any official capacity claim under LA. CIV. CODE ANN. art. 2315.11. The undersigned

will recommend that Brown's claim against Miguez in her individual capacity be preserved for further proceedings.

### *VII. Constitutional Claims Pursuant to 42 U.S.C. § 1983*

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (quoting *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980)). When a municipal employee violates a right guaranteed by the federal Constitution, he may be sued in an individual capacity under Section 1983, provided the offending conduct was undertaken "under color of law." *Lindke v. Freed*, 601 U.S. 187, 194 (2024). Brown's Complaint asserts claims pursuant to 42 U.S.C. § 1983 for violation of his Fourth, Fifth, and Fourteenth Amendment rights against all Defendants. [Doc. 1 at ¶¶ 159–63].

Whether a police officer is acting "under color of law" as required by Section 1983 depends upon: "(1) whether the officer misused or abused some official power[,]; and (2) if there is a nexus between the victim, the improper conduct, and the officer's performance of official duties." *Santander v. Salazar*, 133 F.4th 471, 479 (quoting *Gomez v. Galman*, 18 F.4th 769, 776 (5th Cir. 2021) (quoting *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 464–65 (5th Cir. 2010)). "Whether a police officer is acting under color of law does not depend on duty status at the time of the alleged violation." *Id.* (citing *Gomez*, *supra* (quoting *United States v. Tarpley*, 945 F.2d 806, 809 (5th Cir. 1991)).

As to Miguez, Brown's allegations, taken as true, do not claim the misuse or abuse of official power. Specifically, Brown does not allege that Miguez's conduct arose from the performance of her duties as a police officer, nor does he allege that she attempted to subject him to her authority as a police officer. Brown's Complaint does allege, in a conclusory

fashion, that Miguez was in the course and scope of her employment with APD at the time of the conduct at issue. [Doc. 1 at ¶ 174]. However, taken as true for these purposes, the conduct alleged by Brown bore no connection to Miguez's duties as a police officer, such that the November 1, 2023 incident could have happened in virtually any setting. The facts as alleged in this case reinforce the *Gomez* court's observation that conduct by an on-duty police officer may be wholly separate from the officer's official duties. Based on the allegations of Brown's Complaint, this Court will recommend that all Section 1983 claims against Miguez be dismissed with prejudice.

Similarly, Brown's Section 1983 claims fail as to Chief Hardy and the City. Brown's Complaint alleges broadly that his Fifth and Fourteenth Amendment due process rights were violated when "she [sic] was deprived her [sic] protected liberty interest to be free from sexual abuse and bodily intrusions by state actors" and "the right to be free from unjustified and excessive force utilized by police" [Doc. 1 at ¶ 160]. As explained above, to the extent that Brown's due process claims are based on Miguez's conduct, such conduct is not plausibly alleged as undertaken "under color of law." Brown also alleges that his Fourth Amendment rights were violated, specifically "his…right to be free from unlawful seizure of his person." [*Id.*]. Again, to the extent that Brown alleges he was "seized" by Miguez during the November 1, 2023 incident, such conduct is not actionable under Section 1983, as it was not undertaken "under color of law" according to the allegations of the Complaint. Moreover, Fifth Amendment claims under Section 1983 are available only as to federal government action. *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996). Additionally, Fourth and Fourteenth Amendment claims under Section 1983 do not apply as to actions by private citizens. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922 (1982); *Shelley v. Kraemer*, 335 U.S. 1 (1948).

Municipal liability under Section 1983 may not be based on the theory of *respondeat superior*. Rather, a municipality may only be held liable for constitutional violations

pursuant to Section 1983 where acts in violation of a constitutional right are "directly attributable to it 'through some official action or imprimatur.'" *Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). Generally, municipal liability under Section 1983 requires proof of: a policymaker, an official policy [or custom]; and a violation of constitutional rights whose moving force is the policy or custom. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 166 (5th Cir. 2010) (quoting *Piotrowski*, *supra*).

Brown's Complaint asserts Section 1983 claims against "all Defendants." [Doc. 1 at p. 20]. To the extent that Brown purports to assert liability as to the City outside of that permitted under *Monell*, such claims are subject to dismissal. Additionally, Brown's *Monell* claims, stated against the City separately in Count Eleven of his Complaint, fail as a matter of law based on an underlying failure to adequately plead constitutional violations. Where, as here, a plaintiff fails to state a viable claim for violation of a constitutional right, municipal liability under *Monell* is foreclosed. *Albert v. City of Petal*, 819 F. App'x 200, 203 (5th Cir. 2020).

Considering the foregoing, this Court finds that all Section 1983 Fourth, Fifth, and Fourteenth Amendment claims by Brown should be dismissed as to all Defendants.

### *VIII. Intentional Infliction of Emotional Distress and Civil Conspiracy*

Louisiana law recognizes the tort of intentional infliction of emotional distress ("IIED"), which contemplates conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). An IIED claim requires a plaintiff to demonstrate:

> (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the

> plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.

*Id.* "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.*

Brown's Complaint asserts IIED claims against the City and Chief Hardy. [Doc. 1 at ¶¶ 176–181]. Specifically, Brown alleges that Chief Hardy conspired to extort Brown for the purpose of convincing him to drop his complaints against Miguez in exchange for Chief Hardy dropping the IA referral. [*Id.*]. Brown also alleges that Chief Hardy conspired with the City Attorney to intentionally inflict emotional distress upon him. [*Id.*].

The conduct at issue in these claims, while perhaps supportive of Brown's retaliation claim, is not so severe or indecent to constitute grounds for an IIED claim under Louisiana law. *Perez v. City of New Orleans*, 171 F. Supp. 3d 337, 354 (E.D. La. Mar. 24, 2016) (allegations that police officer was denied promotion, subjected to demeaning treatment and excessive criticism were insufficient to state a claim for IIED).

Article 2324 of the Louisiana Civil Code instructs that "[h]e who conspires with another person to commit and intentional or willful act is answerable, in solido, with that person for the damage caused by such act." This statute does not create an independent cause of action. Instead, Article 2324 imposes solidary liability for the underlying intentional tort. *Simoneaux v. Taylor Seidenbach, Inc.*, 708 F. Supp. 3d 821, 827 (E.D. La. 2023) (citing *Crutcher-Tufts Resources, Inc. v. Tufts*, 992 So. 2d 1091, 1094 (La. App. 4 Cir. 2008) (citing *Ross v. Conoco, Inc.*, 828 So. 2d 546, 546 (La. 2002)). Considering this Court's finding that Brown fails to state a viable claim for IIED as against Chief Hardy, Brown's claims for conspiracy among Chief Hardy and the City to commit IIED against him necessarily fail as

a matter of law. Accordingly, the undersigned will recommend dismissal with prejudice of Brown's claims against Chief Hardy and the City for IIED and civil conspiracy.

### *IX. Punitive Damages*

A separate Rule 12(b)(6) motion to dismiss punitive or exemplary damages claims was filed on behalf of the City and Chief Hardy. [Doc. 49]. That motion argues that no punitive damages are available against a municipality or a municipal official in his official capacity and further orders that punitive damages are unavailable in any civil action unless specifically provided for by statute. [Doc. 49-1]. Brown's opposition brief clarifies that he asserts no claim for punitive damages against the City or Chief Hardy in his official capacity, but does assert such claims against Chief Hardy in his individual capacity. [Doc. 56 at p. 7]. As explained above, however, the only viable punitive damages claim in this suit is that asserted against Miguez pursuant to article 2315.11 of the Louisiana Civil Code. Brown's Complaint does not assert this claim against Chief Hardy in any capacity. Brown's brief conflates allegations of misconduct by Chief Hardy with bases for the imposition of punitive damages, which again, are not available except by express designation. Accordingly, this motion is moot.

## Conclusion

For the reasons discussed herein, this Court recommends that the RE-URGED MOTION TO DISMISS filed by Chief Michael Hardy [Doc. 47] be GRANTED IN PART, dismissing all individual and official capacity claims by Plaintiff Quaylain Brown against Chief Hardy under the LEDL, LHRA, the Fourth, Fifth, and Fourteenth Amendments via 42 U.S.C. § 1983, and for intentional infliction of emotional distress and civil conspiracy under Louisiana law. This Court further recommends that Chief Hardy's motion be DENIED AS MOOT as to claims against him under Title VII of the Civil Rights Act of 1964 and for punitive damages under article 2315.11 of the Louisiana Civil Code.

It is further recommended that the RE-URGED PARTIAL MOTION TO DISMISS filed by the City of Abbeville [Doc. 48] be GRANTED, dismissing all claims by Brown against the City under the LHRA, the Fourth, Fifth, and Fourteenth Amendments via 42 U.S.C. § 1983, and for intentional infliction of emotional distress and civil conspiracy under Louisiana law. This Court further recommends that Brown's claims against the City under Title VII of the Civil Rights Act of 1964, the LEDL, and for vicarious liability be preserved for further proceedings as may be appropriate.

It is further recommended that the RE-URGED RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED filed by Defendant Shawna Miguez [Doc. 51] be GRANTED, dismissing all claims by Brown against Miguez under the LEDL, the LHRA, for punitive damages based on assault and battery, for damages under Article 2315.11 in Miguez's official capacity, and under the Fourth, Fifth, and Fourteenth Amendments via 42 U.S.C. § 1983. This Court further recommends that Brown's claims against Miguez in her individual capacity under Louisiana tort law for assault and battery and for damages under Article 2315.11 in her individual capacity be preserved for further proceedings as may be appropriate.

It is finally recommended that the RE-URGED MOTION TO DISMISS PENALTY, PUNITIVE, OR EXEMPLARY DAMAGES filed by the City and Chief Hardy [Doc. 49] be GRANTED, such that any purported claims for punitive damages against Defendants Chief Hardy and the City be dismissed with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may

respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.

**THUS DONE** in Chambers, Lafayette, Louisiana on this 9th day of October, 2026.

**DAVID J. AYO**
**UNITED STATES MAGISTRATE JUDGE**